## THE PESAQUID.

### UNITED STATES v. 3,500 CASES, MORE OR LESS, OF DISTILLED SPIRITS.

(District Court, D. Rhode Island. February 23, 1926.)

Nos. 1589, 1590.

1. **Customs duties** &copy;=133 — **Internal revenue** &copy;=46—**Intoxicating liquors** &copy;=250—**Indefinite allegation, in answer to libels for penalties against ship and forfeiture of cargo, that ship was on the high seas proceeding to foreign port is not in accordance with the requirement of admiralty pleading (Rev. St. § 3450 [Comp. St. § 6352]; Tariff Act 1922, § 1, par. 813, and section 584 [Comp. St. Ann. Supp. 1923, §§ 5841a, 5841h3]; National Prohibition Act, tit. 2, § 25 [Comp. St. Ann. Supp. 1923, § 10138½m]).**

Indefinite allegation, in answer to libels against ship, under Rev. St. § 3450 (Comp. St. § 6352), and Tariff Act 1922, § 584 (Comp. St. Ann. Supp. 1923, § 5841h3), and against cargo under section 1, par. 813 (section 5841a), and National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), that ship was on the high seas proceeding to a foreign port is not in accordance with the requirements of admiralty pleading, and is indicative of an unwillingness to disclose her location on the high seas or her definite voyage.

2. **Intoxicating liquors** &copy;=246—**Vessel laden with liquor must take reasonable care to keep out of prohibited waters.**

A vessel laden with liquor is bound to take reasonable care to keep out of prohibited waters and to exercise skill of seamen to do so, since our laws deny to foreign ships the free use of waters for transportation of intoxicants.

**3. Customs duties ⬡⟿133—Internal revenue ⬡⟿46—Intoxicating liquors ⬡⟿250—Evidence held to show that ship with cargo of intoxicating liquor was not forced to come within waters of United States by reason of stress of weather (Rev. St. § 3450 [Comp. St. § 6352]; Tariff Act 1922, § 1, par. 813, and section 584 [Comp. St. Ann. Supp. 1923, §§ 5841a, 5841h3]; National Prohibition Act, tit. 2, § 25 [Comp. St. Ann. Supp. 1923, § 10138½m]).**

In libel against ship for penalties under Rev. St. § 3450 (Comp. St. § 6352), and Tariff Act 1922, § 584 (Comp. St. Ann. Supp. 1923, § 5841h3), and against cargo of liquor for forfeiture under section 1, par. 813 (section 5841a), and National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), evidence *held* not to show that vessel was forced to come within waters of the United States by reason of stress of weather and to have voluntarily come to a place of anchorage.

**4. Internal revenue ⬡⟿46—Forfeiture provision of internal revenue law not applicable to foreign vessel with cargo of liquor claimed to have put into port under stress of weather (Rev. St. § 3450 [Comp. St. § 6352]).**

Rev. St. § 3450 (Comp. St. § 6352), providing for forfeiture of conveyances used in removal or concealment of articles, with intent to defraud United States of tax due thereon, is not applicable to foreign vessel with cargo of liquor coming from the high seas claiming to have been disabled and to have been in under stress of weather.

**5. Customs duties ⬡⟿130—Master failing to show manifest is liable to penalties, which become a direct liability of vessel, subjecting her to immediate seizure and summary proceedings by libel (Tariff Act 1922, §§ 584, 594 [Comp. St. Ann. Supp. 1923, §§ 5841h3, 5841h14]).**

Under Tariff Act 1922, § 584 (Comp. St. Ann. Supp. 1923, § 5841h3), master who failed to show manifest on being boarded by officer of coast guard patrol became liable for penalties, and, under section 594 (section 5841h14), penalties incurred by the master became a direct liability of vessel, subjecting her to immediate seizure and summary proceedings by libel.

**6. Customs duties ⬡⟿130—Officers of coast guard patrol were warranted in boarding and seizing foreign ship within United States waters carrying cargo of liquor (Tariff Act 1922, § 581 [Comp. St. Ann. Supp. 1923, § 5841h]).**

Under Tariff Act 1922, § 581 (Comp. St. Ann. Supp. 1923, § 5841h), officers of coast guard patrol were warranted in boarding and seizing foreign vessel within° waters of the United States and carrying cargo of liquor.

**7. Customs duties ⬡⟿130—Intoxicating liquors ⬡⟿246—Cargo of liquor on board foreign ship in United States waters without permit held subject to seizure and forfeiture (Tariff Act 1922, § 1, par. 813 [Comp. St. Ann. Supp. 1923, § 5841a]; National Prohibition Act, tit. 2, § 25 [Comp. St. Ann. Supp. 1923, § 10138½m]).**

Under Tariff Act 1922, § 1, par. 813 (Comp. St. Ann. Supp. 1923, § 5841a), National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), cargo of liquor on board foreign vessel within United States waters without permit is subject to seizure and forfeiture.

In Admiralty. Libels by the United States against the British auxiliary schooner Pesaquid, and against 3,500 cases, more or less, of distilled spirits. Decrees for libelant.

Norman S. Case, U. S. Atty., and Harold A. Andrews, Asst. U. S. Atty., both of Providence, R. I.

Rosenfeld & Hagan, of Providence, R. I., for claimants.

BROWN, District Judge. The libel in rem against the British auxiliary schooner Pesaquid is for penalties under Revised Statutes, § 3450 (Comp. St. § 6352) and section 584, title 4, of the Tariff Act of 1922 (Comp. St. § 5841h3).

A charge of violation of section 585, being Comp. St. Ann. Supp. 1923, § 5841h4, was not sustained, and is abandoned.

The libel against the cargo is for forfeiture of 3,500 cases, more or less, of distilled spirits under paragraph 813, § 1, title 1, of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841a), and also under section 25, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m). By stipulation, the two libels were tried together.

While at anchor about a mile southeast of Old Harbor Breakwater, Block Island, R. I., on the forenoon of February 28, 1925, the Pesaquid was boarded by the captain and members of the crew of coast guard patrol boat "236." They found a cargo of between 3,500 and 4,000 cases of liquor. Upon request of the boarding officer for his papers, manifest, etc., the master of the schooner produced only a crew list, and no manifest or other papers. Upon being asked what he was doing there, he replied, "I guess you know." The master of the Pesaquid then stated that he was in under "stress of weather." The master of the Pesaquid asked if the boarding officer could not claim for him distress of weather. The boarding officer replied that it was foolishness, as with the direction of the wind that was blowing at that time he could not possibly have been in that position from Block Island from distress of weather, as the wind was blowing northwest, which would have blown him to sea, were he under way, and then seized schooner and cargo. The place of seizure was within collection district No. 5 of Rhode

Island; the nearest port of entry being Newport.

The answer sets up as a distinct defense: "XXX. That the said vessel and cargo, while on the high seas, and attempting to proceed to her destination, to wit, to a foreign port, by reason of severe weather and rough seas, and by reason of the machinery of the said vessel becoming disabled, and for numerous other causes beyond the control of the master and crew of the said vessel, was forced to a place on the high seas, as indicated in paragraph 'third' of the libel" [about one mile southeast of Old Harbor Breakwater, Block Island, R. I., in said district and within the admiralty and maritime jurisdiction of this court], "and, being in a helpless condition, the said master of the vessel and his crew signaled to passing vessels that the vessel was in distress, and called for aid and assistance, and one of the United States coast guard vessels, in the charge of J. D. Tevens, came to the assistance of the said vessel, and brought the same into the port of New London in the district of Connecticut, and thereafter the said vessel was removed from the district of Connecticut to the district of Rhode Island, without the knowledge or consent of the master of the said vessel, and without the knowledge or consent of the owner and claimant of the vessel and cargo."

[1] Upon the trial, no evidence, oral or documentary, was offered on behalf of the Pesaquid. The indefinite allegation that she was on the high seas, proceeding to a foreign port, is not in accordance with the requirements of admiralty pleading, and is an indication of an unwillingness to disclose her location on the high seas or her definite voyage. As she withholds explanation, the case may be disposed of on the government's evidence, without deciding whether a schooner, laden with distilled spirits, which in February anchors or hovers near our three-mile limit, and finds too severe such conditions of sea and weather as should be expected in winter on our coast, can secure the benefit of exemptions in favor of vessels in distress by ascribing her plight to causes beyond her control rather than to her own negligent acceptance of extraordinary risks.

[2] In a jury trial, where a similar claim of distress was made, I instructed the jury that a vessel laden with liquor was bound to take reasonable care to keep out of prohibited waters, and to exercise the skill of seamen to do so, since our laws deny to foreign ships the free use of our waters for the transportation of intoxicants.

The Pesaquid was first observed some time between 1 and 2 o'clock in the morning of February 27, 1925, the day before the seizure, by members of the crew of coast guard patrol boat "236," who saw her coming from the southeast of Block Island without lights. The boarding officer of the "236" testified that it appeared to him as if she came from the direction where the rum fleet was, southeast of Block Island light. She was coming in the direction of Block Island, full sails set. No attempt was made to board her at that time, as the sea was rough, but, after daylight, attempts were made by the "236" to board the Pesaquid, but the sea was still rough, and the Pesaquid was not boarded until 7 a. m. on the 28th.

The velocity of the wind at the time the Pesaquid came in was about 45 miles an hour. A northwesterly wind had been blowing approximately two days before the Pesaquid came in. The weather was clear at the time she anchored.

The boarding officer made an examination of the cargo, finding that the hatch had already been opened and the hatch covering, i. e. the tarpaulin, had been thrown back. Her standing rigging appeared to be in good condition, but her sails looked as if they had been doused in a hurry and were thrown on the deck and were not tied up. The boarding officer looked down her well, but did not see that she was leaking any to speak of any more than an ordinary vessel, and saw no evidence on the deck of havoc of the wind.

Todd, chief engineer on the patrol boat, testified that the engineer of the Pesaquid had difficulty in preparing to start his engine after the seizure by the patrol boat; that the engineer told him that he had come in under power to where they came to anchor, and said it took him about eight hours to make 30 miles.

The Assistant Collector of Customs testified to his appraisal of the liquor taken off the Pesaquid as amounting to $41,000, at $12.50 a case. Von Steinberg, a United States custom clerk in Boston, testified that the Pesaquid was entered in ballast at Boston on February 14, 1925, from Norfolk, Va., and cleared February 17, 1925, in ballast for Halifax, N. S.

[3, 4] Upon the whole testimony I am unable to find that the vessel was forced to come within the waters of the United States and of this district by reason of stress of weather, but find that she was in a seaworthy condition and able to make headway by power and sail against a rough sea and a strong wind which would have favored any

probable foreign voyage rather than have caused her to head in to make Block Island. That she had some engine trouble in the air compression is probably true, but there is no evidence of the complete disablement of her machinery before she came in or of any trouble requiring outside aid in repair. I find, therefore, that she came voluntarily to the place of anchorage. Accepting the statement that she came from the high seas, though not satisfied with the statement in her answer that she was on a foreign voyage, I am of the opinion that upon the facts the United States has failed to show the applicability of Revised Statutes, § 3450. See R. S. § 3448 (Comp. St. § 6350); U. S. v. One Buick Automobile (D. C.) 300 F. 584; The Herreshoff (D. C.) 6 F.(2d) 414; The G–883 (D. C.) 6 F.(2d) 416.

[5] The principal question as to the liability of the vessel arises under section 584, title 4, of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h3):

"*Falsity or Lack of Manifest.*—Any master of any vessel and any person in charge of any vehicle bound to the United States who does not produce the manifest to the officer demanding the same shall be liable to a penalty of $500, and if any merchandise, including sea stores, is found on board of or after unlading from such vessel or vehicle which is not included or described in said manifest or does not agree therewith, the master of such vessel or the person in charge of such vehicle shall be liable to a penalty equal to the value of the merchandise so found or unladen, and any such merchandise belonging or consigned to the master or other officer or to any of the crew of such vessel, or to the owner or person in charge of such vehicle, shall be subject to forfeiture and if any merchandise described in such manifest is not found on board the vessel or vehicle the master or other person in charge shall be subject to a penalty of $500: Provided, that if the collector shall be satisfied that the manifest was lost or mislaid without intentional fraud, or was defaced by accident, or is incorrect by reason of clerical error or other mistake and that no part of the merchandise not found on board was unshipped or discharged except as specified in the report of the master, said penalties shall not be incurred."

Under this statute, as applied to the present case, the master became liable to a penalty of $500, and also to a penalty equal to the value of the merchandise found on board not described in a manifest. By virtue of the provisions of section 594, title 4, of the

Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841h14):

"*Seizure of Vessels and Vehicles.*—Whenever a vessel or vehicle, or the owner or master, conductor, driver, or other person in charge thereof, has become subject to a penalty for violation of the customs-revenue laws of the United States, such vessel or vehicle shall be held for the payment of such penalty and may be seized and proceeded against summarily by libel to recover the same," etc., the penalties incurred by the master became a direct liability of the vessel, subjecting her to immediate seizure and to summary proceedings by libel. The Scow 6–S, 250 U. S. 269, 63 L. Ed. 977; The 6–S (D. C.) 39 S. Ct. 452, 247 F. 348; The C. G. White, 64 F. 579, 12 C. C. A. 314; U. S. v. Coamo, 45 S. Ct. 237, 267 U. S. 220, 69 L. Ed. 582.

The libel No. 1590 against the cargo of distilled spirits.

It is plain that claimants can take no advantage of article 3 of the convention between the United States and Great Britain signed January 23, 1924 (43 Stat. 1761), which provides:

"No penalty or forfeiture under the laws of the United States shall be applicable or attach to alcoholic liquors or to vessels or persons by reason of the carriage of such liquors, when such liquors are listed as sea stores or cargo destined for a port foreign to the United States, its territories or possessions on board British vessels voyaging to or from ports of the United States, or its territories or possessions or passing through the territorial waters thereof, and such carriage shall be as now provided by law with respect to the transit of such liquors through the Panama Canal, provided that such liquors shall be kept under seal continuously while the vessel on which they are carried remains within said territorial waters and that no part of such liquors shall at any time or place be unladen within the United States, its territories or possessions."

That the seizure of the liquor was warranted appears from paragraph 813, § 1, title 1, of the Tariff Act of 1922 (Comp. St. Ann. Supp. 1923, § 5841a), which reads:

"Par. 813. No wines, spirits, or other liquors or articles provided for in this schedule containing one-half of 1 per centum or more of alcohol shall be imported or permitted entry except on a permit issued therefor by the commissioner of internal revenue, and any such wines, spirits, or other liquors or articles imported or brought into the United States without a permit shall be

seized and forfeited in the same manner as for other violations of the customs laws."

[6] That the boarding and seizure by officers of the Coast Guard was warranted appears from the Tariff Act of 1922, title 4, § 581, 42 Stat. 979 (Comp. St. Ann. Supp. 1923, § 5841h):

"Officers of the customs or of the coast guard, and agents or other persons authorized by the Secretary of the Treasury, or appointed for that purpose in writing by a collector may at any time go on board of any vessel or vehicle at any place in the United States or within four leagues of the coast of the United States, without as well as within their respective districts, to examine the manifest and to inspect, search, and examine the vessel or vehicle, and every part thereof, and any person, trunk, or package on board, and to this end to hail and stop such vessel or vehicle, if under way, and use all necessary force to compel compliance, and if it shall appear that any breach or violation of the laws of the United States has been committed, whereby or in consequence of which such vessel or vehicle, or the merchandise, or any part thereof, on board of or imported by such vessel or vehicle is liable to forfeiture, it shall be the duty of such officer to make seizure of the same, and to arrest, or, in case of escape or attempted escape, to pursue and arrest any person engaged in such breach or violation."

The liquors were brought into territory of the United States and within the collection district of Rhode Island. Assuming that it was impracticable for the vessel to proceed or to communicate with the customs authorities at the nearest port of entry, Newport, R. I., there was probable cause for the seizure, and the liquor was forfeitable under paragraph 813 as well as under section 25, title 2, of the National Prohibition Act.

While there is force in the suggestion that the vessel is not forfeitable under section 26 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½mm), because there is no conviction of a person in possession, yet the Supreme Court in Carroll v. U. S., 45 S. Ct. 280, 287, 267 U. S. 132, page 158 (69 L. Ed. 543, 39 A. L. R. 790), says:

"The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law. The seizure in such a proceeding comes before the arrest as section 26 indicates. It is true that section 26, title II, provides for immediate proceedings against the person arrested and that upon conviction the liquor is to be destroyed and the automobile or other vehicle is to be sold, with the saving of the interest of a lienor who does not know of its unlawful use; but it is evident that if the person arrested is ignorant of the contents of the vehicle, or if he escapes, proceedings can be had against the liquor for destruction or other disposition under section 25 of the same title. The character of the offense for which, after the contraband liquor is found and seized, the driver can be prosecuted does not affect the validity of the seizure."

[7] I am therefore of the opinion that the third and fourth causes of seizure and forfeiture alleged in the libel against the cargo are sustained, since the cargo was unlawfully brought into and transported within the territory of the United States.

A draft decree to the effect that the vessel is liable for penalties of $500 and $41,000 may be presented in No. 1589.

A draft decree of forfeiture of the cargo may be presented in No. 1590.