## THE SEBASTOPOL.

## THE RUTH MILDRED.

## UNITED STATES v. SODERBERG.

District Court, S. D. New York.
Jan. 12; 1931.

Robert E. Manley, Acting U. S. Atty. of New York City (Arthur H. Schwartz, of

New York City, of counsel), for the United States.

Louis Halle, of New York City (Milton R. Kroopf, of New York City, of counsel), for claimant.

WOOLSEY, District Judge.

These libels are dismissed, without costs.

I. The Sebastopol, a trawler, of St. Johns, Newfoundland, was seized by Coast Guard officers of Coast Guard vessel No. 145, on August 11, 1927, in the Narrows, between the Upper and Lower New York Bays, at about 2:30 a. m. whilst masquerading under the name of the Westmoreland, of Norfolk.

When the Sebastopol was boarded, a man named Donald McDonald, representing himself as her master, produced her register, which gave her true name and home port as above, and, on being asked if he had cargo, admitted that he had a liquor cargo, which turned out, on examination, to contain 4,841 cases of Scotch whisky. She was then on a course that would take her as far as possible from Quarantine. Thus apparently she hoped to avoid detection and get up to New York City.

The painting of her name plates and the appearance of their having been newly attached attracted the attention of the Coast Guards when they turned the searchlights of the No. 145 on her.

When she was boarded, an open case of liquor was found in the pilot house. The ship's documents, some of which were discovered only after considerable search, consisted of her registry as above, an agreement and account with her crew, and a manifest which was false, in that it did not list the liquor cargo.

A variety of name plates were also found aboard, so she was prepared for almost Protean transformations. She might be, at will, the Sebastopol of St. Johns, Newfoundland, the May Emily of St. Johns, Newfoundland, or the Westmoreland, of Norfolk, Va.

The Sebastopol and her cargo of liquor, samples of which marked in evidence showed an illegal alcoholic content, were turned over to the Customs. Her master and crew were charged in a complaint before a United States commissioner with violation of the National Prohibition Act.

By agreement, the foreign value of the cargo of Scotch whisky is fixed at $10 per case, making its total value $48,410. The vessel was appraised at $7,500.

A stipulation for value in this sum following the usual form, has been filed, and the vessel has gone on her way.

II. The vessel in the second case is the auxiliary schooner Ruth Mildred. She is a vessel of the United States licensed from Gloucester, Mass., to engage in the cod and mackerel fisheries. She is 82 feet in length, 21.5 in depth, and her official number is 222,-218.

Shortly after midnight on March 1, 1928, the United States Coast Guard vessel, No. 148, in charge of Coast Guard Officer George Watson, since deceased, was patrolling the eastern entrance of Long Island Sound. Whilst the No. 148 was in the vicinity of Race Rock, off the coast near New London, Conn., she observed the Ruth Mildred proceeding under power to the westward. On being hailed, her master said she was bound for New York.

Although the visibility was good and the wind moderate, the sea was so rough as to make it impossible to board the schooner in the darkness. Accordingly, Watson, the captain of the No. 148, knowing that the Ruth Mildred was under suspicion, sent a wireless message to the patrol office of his service on Block Island, and was instructed by those there in charge to trail the schooner and watch her discharge.

Through the night the vessels proceeded —practically in company—westward through Long Island Sound, finally arriving in the latter part of the morning at the foot of Fulton street, East River, New York City, where the Ruth Mildred tied up at a wharf. The members of her crew were already on deck, and at once piled ashore. A few minutes later the Coast Guard vessel No. 148 came alongside. By that time the whole crew of the Ruth Mildred had disappeared.

About 11:15 a. m. the captain of the No. 148 and some of his crew went on board the schooner and found that even her captain had left her.

About 1 p. m. the captain of the Ruth Mildred, who turned out to be Nils Soderberg, her owner and the claimant in this suit, came on board and showed his documents to the captain of the No. 148.

In pursuance of his instructions, the captain of the No. 148 stated that he would remain alongside the Ruth Mildred until her cargo was unloaded. When he made this intention known to the captain of the Ruth Mildred, the latter said: "You have got a rummy this time," and, "If that is the case I might as well tell you the truth. You have

a good catch here. I am loaded up to the gills with liquor," which was a most felicitous metaphor, because his liquor cargo was hidden beneath a convenient veneer of fresh fish.

Subsequently, when asked how much liquor he had on board, the captain of the Ruth Mildred, though admitting she was fully loaded, did not state the amount of his cargo. When asked where he got the liquor, he said that he had secured it in the vicinity of "Georges Banks"—properly St. George's Banks—which are fishing banks about one hundred miles east of Cape Cod.

In view of this admission, the Ruth Mildred was seized, and subsequently a search was made.

On board her were found 220 boxes and 170 bags of rye whisky and other alcoholic liquor, of a potable quality, containing in excess of the legal one-half of 1 per cent. of alcohol by volume.

The estimated foreign value of this liquor was $27,800 and the estimated value here was $62,400.

On April 2, 1928, a libel was filed against the Ruth Mildred to enforce penalties and forfeiture against her on the ground that she had become subject to forfeiture under section 4377 of the U. S. Revised Statutes (title 46, U. S. Code, § 325 [46 USCA § 325]), because she had violated the terms of her license, in that she had been found engaged in transporting intoxicating liquors within the territorial waters of the United States when she was licensed only to engage in the cod and mackerel fisheries.

The Ruth Mildred was duly appraised at $10,000, and was later released on the filing of a claim and answer by Nils Soderberg, her owner, and a stipulation for her full appraised value in the sum of $10,000.

III. The case of the Ruth Mildred differs from the case of the Sebastopol in two respects only: First, in the fact that it is contended that search and seizure of the Ruth Mildred was illegal, as not being founded on reasonable grounds; and, second, in that she is a vessel of the United States, and the statute invoked for her forfeiture is a statute, title 46, U. S. Code, § 325 (46 USCA § 325), applying to vessels registered, enrolled, or licensed in the United States requiring them to confine themselves to the trade for which they are licensed.

Whilst these cases were not tried together, they are submitted together, and a single opinion will serve for the disposal of both.

IV. Before proceeding to the main question, there are some futile contentions made by both the parties which have to be met and put aside.

These contentions and my comments thereon are as follows:

■ A. The claimant of the Ruth Mildred contends that there was an illegal search and seizure in that case.

I hold that the seizure of the Ruth Mildred was justified. There was not any search, legal or illegal, if one uses that word to mean an act precedent to, and resulting in, a seizure.

A search was forestalled by the confession of her captain, above noted, that the Ruth Mildred was a rum runner. Such a confession justified the seizure and made a search unnecessary just as a plea of guilty justifies a sentence and makes a trial unnecessary.

The reason for this is, of course, that, by his confession, the suspect and, by his plea of guilty, the prisoner, definitely elects not to stand on his constitutional rights, and so expressly waives them.

Surely after such a confession as was here made the most enthusiastic champion of the Bill of Rights would not seriously contend that a government officer engaged in law enforcement should at once withdraw on constitutional grounds and seek a search warrant from the nearest United States commissioner. As Judge Coleman aptly remarked in another connection where a claim of illegal search had been put forward, that "Common sense is not barred by the Fourth and Fifth Amendments." In re Kips Bay Brewing & Malting Co. (D. C.) 29 F.(2d) 836, 837.

B. The government contends, with what relevancy does not clearly appear to me, that I should take into consideration in dealing with these cases that executive clemency is often extended to innocent victims of forfeiture.

The consideration was urged in the government's brief before the Circuit Court of Appeals for the Fourth Circuit in the case of The Pilot, 43 F.(2d) 491, and was mentioned by Judge Northcott in his opinion at page 493.

My answer to this contention does not interest me, because I am dealing with rights under the law and not with possible clemencies.

■ C. The government also contends that, by filing stipulation for value, the claimant

waived the right to contend that the libels are brought under the wrong statutes.

My answer to that contention is that, if the owner of property proceeded against in rem files a stipulation for value under the common practice here or a bond for double the amount of the libelant's claim under title 28, U. S. Code, § 754 (28 USCA § 754), or section 26 of title 2 of the National Prohibition Act (27 USCA § 40), he does not waive any defense which may be available to him.

Chief Justice Waite, sitting here on Circuit, said in The Fidelity, 16 Blatchf. 569, 8 Fed. Cas. 1189, at page 1192, No. 4758:

"The stipulation filed to obtain the release of the tug is not a waiver of the question as to the original liability of the tug. The stipulation takes the place of the vessel, and, for all the purposes of the trial, the case goes on as if the vessel were itself in court."

To the same effect also are The Monte A (D. C.) 12 F. 331, 335; The Berkeley (D. C.) 58 F. 920, 922, 923; The Lisbon, 3 F. (2d) 408, 409 (C. C. A. 9).

 V. After the Sebastopol was tried before me in December, 1929, and whilst it was under advisement, I was requested by both parties to hold up my decision pending a decision by the Supreme Court in the case of Richbourg Motor Co. v. U. S. and Davies Motor Co., Inc., v. U. S., hereafter referred to as the Richbourg Case, which was then awaiting argument in the Supreme Court on the ground that the decisions in those cases would probably control these cases.

These decisions went against the government, Richbourg Motor Co. v. U. S., 281 U. S. 528, 50 S. Ct. 385, 74 L. Ed. 1016, and now the government contends that they do not govern my decision in these cases, whilst the counsel for the steamship adheres to his original position that they do.

VI. The only difference between the Richbourg Case and these two cases is that in the Richbourg Case the forfeiture of the automobile involved was sought under Revised Statutes, § 3450, now title 26, U. S. Code, § 1181 (26 USCA § 1181), whilst here the penalties in the Sebastopol Case and the forfeiture in the case of the Ruth Mildred are sought under other provisions of the statutes.

The basis of the libel against the Sebastopol is section 584 of the Tariff Act of 1922 (title 19, U. S. Code, § 486 [19 USCA § 486]), dealing with the falsity or lack of manifests on vessels, and prescribing penalties to the amount of the value of the merchandise if it be not manifested. Section 594 of the said Tariff Act (title 19, U. S. Code, § 498 [19 USCA § 498]), prescribes the method of collection of the penalties by holding the vessel as security.

Section 498 of title 19, U. S. Code (19 USCA § 498), reads as follows:

"Whenever a vessel or vehicle, or the owner or master, conductor, driver, or other person in charge thereof, has become subject to a penalty for violation of the customs-revenue laws of the United States, such vessel or vehicle shall be held for the payment of such penalty and may be seized and proceeded against summarily by libel to recover the same."

The Sebastopol, therefore, was in effect surety for her master's payment of the penalties incurred by false manifest, and, as such, she was libeled, and, thereafter, as above mentioned, a stipulation in the usual form for her full agreed value was filed.

Forfeiture of the Ruth Mildred is sought under Revised Statutes, § 4377, which stems back to the Act of Feb. 18, 1793, c. 8, § 32, and is now section 325 of title 46 of the United States Code (46 USCA § 325). That section provides:

"*Penalty for Violation of License.* Whenever any licensed vessel is transferred, in whole or in part, to any person who is not at the time of such transfer a citizen of and resident within the United States, or is employed in any other trade than that for which she is licensed, or is found with a forged or altered license, or one granted for any other vessel, such vessel with her tackle, apparel, and furniture, and the cargo, found on board her, shall be forfeited. But vessels which may be licensed for the mackerel fishery shall not incur such forfeiture by engaging in catching cod or fish of any other description whatever."

Section 26 of title 2 of the National Prohibition Act (title 27, U. S. Code, § 40 [27 USCA § 40]), is the act under which the respective claimants contend their vessels should have been libeled.

That section reads as follows:

"*Unlawful Transportation of Liquor; Seizure and Destruction of Liquor and Sale of Vehicle.* When the commissioner, his assistants, inspectors, or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any wagon, buggy, automobile, water or air craft, or other vehicle, it shall be his duty to seize any and all intoxicating

liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the vehicle and team or automobile, boat, air or water craft, or any other conveyance, and shall arrest any person in charge there-of. Such officer shall at once proceed against the person arrested under the provisions of this chapter in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court. The court upon conviction of the person so arrested shall order the liquor destroyed, and unless good cause to the contrary is shown by the owner, shall order a sale by public auction of the property seized, and the officer making the sale, after deducting the expenses of keeping the property, the fee for the seizure, and the cost of the sale, shall pay all liens, according to their priorities, which are established, by intervention or otherwise at said hearing or in other proceeding brought for said purpose, as being bona fide and as having been created without the lienor having any notice that the carrying vehicle was being used or was to be used for illegal transportation of liquor, and shall pay the balance of the proceeds into the Treasury of the United States as miscellaneous receipts. All liens against property sold under the provisions of this section shall be transferred from the property to the proceeds of the sale of the property. If, however, no one shall be found claiming the team, vehicle, water or air craft, or automobile, the taking of the same, with a description thereof, shall be advertised in some newspaper published in the city or county where taken or if there be no newspaper published in such city or county, in a newspaper having circulation in the county, once a week for two weeks and by handbills posted in three public places near the place of seizure, and if no claimant shall appear within ten days after the last publication of the advertisement, the property shall be sold and the proceeds after deducting the expenses and costs shall be paid into the Treasury of the United States as miscellaneous receipts."

VII. Whether section 26 of title 2 of the National Prohibition Act is the paramount provision of law when it is the alternative basis of a forfeiture to one of the two other statutes above quoted is the subject of my inquiry here.

The question is as to the applicability of one law or another to a given set of circumstances, and involves, therefore, the form of a punitive remedy rather than any matter of substantive law.

There is not any decision of the Supreme Court which deals with these precise statutes, but there are two indications of what its expectable attitude would be on the principles involved.

The first is in a concurring opinion by Mr. Justice Butler, concurred in by Mr. Justice Stone, in Port Gardner Co. v. United States, 272 U. S. 564, 567, 47 S. Ct. 165, 71 L. Ed. 412, and the second in Richbourg Motor Co. v. United States, 281 U. S. 529, 50 S. Ct. 385, 74 L. Ed. 1016, a case where the facts so differed from Port Gardner Case as to enable the dissentients in the earlier case to find a text for their views.

Mr. Justice Butler, dissenting, in the Port Gardner Case, 272 U. S. 564, said at page 567, 47 S. Ct. 165, 166, 71 L. Ed. 412 (italics mine):

"But it leaves open the question which is not decided in No. 115 [U. S. v. One Ford Coupé Automobile] 272 U. S. 321, 47 S. Ct. 154, 71 L. Ed. 279 [47 A. L. R. 1025]. The substance of that question is whether the prohibition officer, discovering one in the act of transportation, may disregard the plain and direct commands of section 26 to proceed against the vehicle as there directed. *I think he has no more right to ignore that command than he has to let the liquor and offender go. The law makes the election.* I regret that this court's answer is so qualified and restricted. Section 26 is not so restrained."

In Richbourg Motor Co. v. United States and Davies Motors, Inc., v. United States, 281 U. S. 528, 50 S. Ct. 385, 74 L. Ed. 1016, automobiles had been seized for the unlawful transportation of intoxicating liquor. The government sought forfeiture of the automobiles under title 26, U. S. Code, § 1181 (26 USCA § 1181), formerly Revised Statutes, § 3450, which authorizes forfeiture of vehicles used in the removal or concealment of any commodity with intent to deprive the United States of a tax due thereon.

Two District Courts had allowed the forfeitures, and the Circuit Court of Appeals for the Fourth and Ninth Circuits [34 F.(2d) 38; 35 F.(2d) 928], had affirmed the courts below.

On certiorari, the Supreme Court reversed both decisions, and said, through Mr. Justice Stone, at page 535 of 281 U. S., 50 S. Ct. 385, 388:

"The objective of title 2, § 26, is not the prosecution of the offender, elsewhere provided for, but the confiscation of the seized liquor and the forfeiture of vehicles used in its transportation, to the · limited extent specified in the section. Every act which it enjoins on public officials is directed to that end.

"In providing for forfeitures under this section Congress was not unaware that the enactment of the National Prohibition Act would enormously increase seizures of vehicles, beyond those made under section 3450 (26 USCA § 1181), and that their forfeiture would place an increased and heavy burden on many innocent persons, unless afforded some protection by the new legislation. By title 2, § 26 (27 USCA § 40), it gave such protection in all cases where the prosecution of the person guilty of the transportation is had under the National Prohibition Act. This would have been but an idle gesture, and the congressional purpose would have been defeated if, in practically every case where the transporting vehicle is seized, the prosecuting officers could compel forfeiture of the interests of innocent third persons under section 3450 (26 USCA § 1181). Yet that is the effect of the construction of title 2, § 26, contended for by the government, since, with the enactment of national prohibition, there can be few cases of illegal transportation which do not involve the concealment of non-tax-paid liquor. See United States v. One Ford Coupe, page 326 of 272 U. S., 47 S. Ct. 154, 71 L. Ed. 279, 47 A. L. R. 1025.

"We think that Congress did not take the precaution to enact the carefully chosen language of section 26 merely to impose general duties on prosecuting officers already placed on them by other sections of the act, but that its purpose was to preclude the nullification of the protection which section 26 had extended to innocent third persons.

"This Court has already held that the provision in section 26 that 'the court upon the conviction of the person so arrested shall * * * order a sale by public auction of the property seized' is mandatory and requires the forfeiture to proceed under that section. Port Gardner Investment Co. v. United States, supra [272 U. S. 564, 47 S. Ct. 165, 71 L. Ed. 412]; Commercial Credit Co. v. United States, supra [276 U. S. 226, 48 S. Ct. 232, 72 L. Ed. 541]. No tenable ground of distinction is suggested which would enable us to say, where forfeiture is involved, that the preceding requirement of the section, that the proceedings against the person arrested 'shall be under the provisions of this title,' is any less so."

Then, after dealing with the legislative history of section 26 of title 2 of the National Prohibition Law, Mr. Justice Stone summarizes the decision of the court thus at page 536 of 281 U. S., 50 S. Ct. 385, 388:

"We are of opinion that under title 2, § 26 (27 USCA § 40), it is the duty of prohibition officers to arrest any person discovered in the act of transportation and to seize the transporting vehicle; that such arrest and seizure require the government to proceed for forfeiture of the vehicle under title 2, § 26. It is unnecessary to say whether, if for any reason the seizure cannot be made or the forfeiture proceeded with, prosecution for any offense committed must be had under the National Prohibition Act rather than other statutory provisions."

VIII. When a vessel of such comparatively small value as the Sebastopol is transporting a cargo of large value, its seizure for the enforcement of penalties provided by section 584 of the Tariff Act of 1922 results in the loss of the vessel to her owner—as devastating to an owner as a forfeiture, even if not so-called—and equally unfair, if that owner be innocent.

So the fact that, as is agreed by the government, the Sebastopol libel is for a penalty instead of a forfeiture, makes no difference to me, unless I am willing to "stick in the bark"—a surface operation which I always try to avoid.

Consequently, the Sebastopol case must follow the principle of the Richbourg Case, unless the fact that the Tariff Act was passed subsequently to the National Prohibition Act makes a difference in the situation.

On September 19, 1930, subsequently to the decision of the Richbourg Case, the Circuit Court of Appeals for the Fourth Circuit in The Pilot, 43 F.(2d) 491, held at page 493 that the Tariff Act of 1922 is not "controlled" by the Prohibition Act of 1919, and reversed a decision dismissing a libel brought for customs penalties under sections 584 and 594 of the Tariff Act of 1922 against a vessel caught within the three-mile limit carrying a cargo of liquor.

No one could properly claim that the Tariff Act, §§ 584 and 594, repealed, by implication, section 26 of title 2 of the National

Prohibition Act providing forfeiture of the vehicle in any case where liquor was found being transported, and as, therefore, section 26 of title 2 of the Prohibition Act is still in full force, we have that section making it a duty, when liquors of unlawful alcoholic content are found being transported within the territory of the United States, to proceed against the carrying vessel or vehicle in a special manner by steps which are detailed in that section.

Naturally, the Tariff Act covers different offenses from those dealt with by the Prohibition Act. I think that sections 584 and 594 of the Tariff Act of 1922 are partly extraterritorial in their ambit, for those sections fall within the category of protective measures which may be exercised outside of the three-mile belt of waters which constitute our marginal sea. Cf. Tariff Act of 1922, § 581 (title 19, U. S. Code, § 481 [19 USCA § 481]); The Mistinguette (D. C.) 14 F.(2d) 753; and United States v. Bengochea, 279 F. 537 (C. C. A. 5).

Section 26 of title 2 of the National Prohibition Act is, however, purely territorial in its ambit, and illegal transportation of liquor would not be possible outside the marginal sea. Cunard Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306.

The two acts overlap, consequently, within the outer limits of the marginal sea of the United States, and within such limits, by its direct and specific terms as interpreted by the Supreme Court, section 26 of title 2 of the National Prohibition Act is the paramount statute.

Consequently, if the Sebastopol had been captured outside the three-mile limit, this libel would have to be sustained, for the only offense then chargeable would have been a false manifest.

But, as she was seized within the three-mile limit, she was guilty, not only of false manifesting, but of transportation of intoxicating liquor. The reason for the first-mentioned offense was to cloak the second.

The purpose of the government is to punish the vessel for the second offense by invoking against her the penalties of the first, which is more easily proved, perhaps, because it does not require, as a condition precedent to its success, the conviction of the person in possession of the vessel, and, in any event, carries under the name of penalty a punishment as drastic against the owner of a small ship, guilty or innocent, as section 26 carries against the guilty only. Cf. The Pesaquid (D. C.) 11 F.(2d) 308.

The case of United States v. The Brig Malek Adhel (Harmony v. U. S.), 2 How. 210, 233, 11 L. Ed. 239, in which the master turned pirate, is the classic case of the forfeiture of a vessel when its owner was obviously innocent of the offense for which it was forfeited. From the date of that case until the enactment of section 26 of title 2 of the National Prohibition Act, so far as I am aware, all forfeiture statutes cut off innocent owners of and lienholders on the vessel from assertion of their claims. Cf. The Pilot (C. C. A.) 43 F.(2d) 491, 493.

As Mr. Justice Stone pointed out in the quotation above given from the Richbourg Case, section 26 was aimed at remedying this injustice.

The government should, I think, in view of the oft-repeated homilies of our criminal law, be astute to save the innocent from injury.

IX. In the case of the Ruth Mildred, which involves the control by our government of its domestic vessels, the libel is for a forfeiture brought under title 46, U. S. Code, § 325 (46 USCA § 325), for breach of her license as a fishing vessel. That statute does not recognize innocent owners or lienors.

If it be objected that the master of the Ruth Mildred is her owner, and confessedly is not innocent, my answer is that we do not know what innocent persons may have liens by way of mortgage or otherwise on her, and that a wrong remedy should not be allowed to be maintained merely because her owner may be guilty.

X. In situations such as we have here, where proceedings in rem against vessels are involved, if their owners come into court as claimants thereto, they come in as actors in the proceeding, for they are in effect petitioners asking for a favor—to have their ships returned to them. United States v. 422 Casks of Wine, 1 Pet. 547, 549, 550, 7 L. Ed. 257. On such a petition the burden is on them to show their ownership, their present right to possession of the vessel, The R. W. Skillinger, 1 Flip. 436, 21 Fed. Cas. 102, 103, No. 12,181, and, in the case of a forfeiture proceeding under section 26 of title 2 of the National Prohibition Act, their innocence of complicity in the acts for which the forfeiture is sought. Cf. United States v. One Hundred and Twenty-Nine Packages, 27 Fed. Cas. 284, 285, 286, No. 15,941.

At this point in any case in rem issue may be joined under a practice long familiar to determine the claimant's locus standi.

United States v. 422 Casks of Wine, 1 Pet. 547, 549, 550, 7 L. Ed. 257; The Two Marys (D. C.) 10 F. 919, 920, 928; The Steamer Spark v. Lee Choi Chum, 1 Sawy. 718, 22 Fed. Cas. 871, 873, No. 13,206; The Prindiville, 1 Brown's Adm. 487, 19 Fed. Cas. 1345, 1346, No. 11,435; United States v. One Hundred Barrels of Cement, 27 Fed. Cas. 292, 293, No. 15,945.

If issue were so joined, for example, in a libel for forfeiture against the Ruth Mildred under section 26 of title 2 of the National Prohibition Act, it is obvious that her owner could not show his innocence—and, unless an innocent lienor turned up, the libel for forfeiture would go by default.

XI. It is clear that in both these cases the breach of the National Prohibition Act was the reason for the proceedings against the vessels.

The government did not go it blind in these cases, and never has to; for obviously it cannot be ascertained whether a vessel's cargo is or is not properly manifested until its nature and quantity is determined, nor can it be told whether a vessel's loading is in violation of its license until the nature of its cargo is determined.

When the facts involved are thus discovered, if the vessel is known to have been engaged in transportation within our territorial waters, and if her cargo be found to contain alcoholic beverages of more than the legal alcoholic content, a violation of the National Prohibition Act is made out, and the persons on board her are punishable thereunder criminally, and, unless the criminal proceeding is unsuccessful, as in United States v. 2180 Cases of Champagne, 9 F.(2d) 710, 712, 713 (C. C. A. 2), there follows forfeiture of the offending vessel.

From the decision of the Supreme Court in the Richbourg Case, I think it is clear that, if forfeiture of the vessel is sought under such circumstances as we find in these two cases, it should be sought under section 26 of title 2 of the National Prohibition Act in order that the innocent owner of or lienor on the vessel may not be victimized as an incident to the operation and enforcement of that important sumptuary edict.

To proceed under another statute in the face of the specific instructions contained in section 26 of title 2 of the National Prohibition Act seems to me to imply nothing less than a ruthless disregard on the part of the government of the possible property rights of innocent parties.

Decrees in accordance with this opinion may be submitted for signature in each of these cases on two days' notice.