### THE EVELYN.

### THE DORIS.

### THE HELEN.

## UNITED STATES v. 146,157 GALLONS OF ALCOHOL (FRANK RIZZO, Claimant).

### Nos. 7811, 7813–7815.

District Court, D. New Jersey.
March 22, 1933.

912

Harlan Besson, U. S. Atty., of Hoboken, N. J., for the Government.

Harry H. Weinberger, of Passaic, N. J., for claimant Frank Rizzo.

Samuel I. Kessler, of Newark, N. J., for claimant Matoil Service & Transport Co., Inc.

FORMAN, District Judge.

On December 22, 1932, the government filed a libel against the oil barge Doris and one against 146,157 gallons of alcohol allegedly found on board. Similar libels were filed against the motor oil screw Evelyn and 4½ gallons of alcohol allegedly found on board and against the oil barge Helen and 3 gallons of alcohol.

On December 23, 1932, one Frank Rizzo filed a "notice of claim" under oath alleging ownership of the 146,157 gallons of alcohol.

On the same day Matoil Service & Transport Company, Inc., claimed ownership in the three vessels. The notices of claim are signed and verified by Samuel Kessler as attorney of the claimant.

On the same day both claimants filed answers and exceptions and gave notices of motions to dismiss the libels.

The United States attorney on December 27, 1932, filed "exceptive allegations" to the claims and the matter came on for hearing pursuant to the notice to dismiss the libels

on December 30, 1932, and was continued until January 27, 1933.

The seizure upon which the libels are based took place at Port Johnson, Bayonne, N. J., on the afternoon of December 12, 1932. Information concerning one or more of these vessels had come to the headquarters of the coast guard, and Customs Guard George Pernisco with a party of customs guards and Boatswain Oscar E. Carlson with a number of coastguardsmen made the seizures. They found the boats lying alongside of each other at a wharf at Port Johnson.

No one being in evidence they boarded the oil barge Doris and lifted a manhole cover and perceived the cargo of alcohol. On boarding the motor oil screw Evelyn they met Frank Rizzo and the Customs Guard Pernisco had a conversation with him during which Rizzo said, "I am just a watchman hired this afternoon by a man named Rogers."

Rizzo now claims to be the owner of the alcohol.

The government in its exceptive allegations joined the issue of ownership and at the hearing the government officials testified, but the claimants relied upon their notices of claim and offered no testimony as to their ownership.

The claimants rest upon the theory that the search being illegal the government never obtained any rights under the seizure.

Therefore, the first question to be considered here is whether the claimants have such standing that they may question the legality of the government's seizures.

Obviously no person can complain of a seizure unless his constitutional rights have been invaded. It is elementary that a mere passerby or some entirely disinterested person cannot question the acts of the government in its seizure. Therefore, the attack upon the seizure must emanate from the owner of the res or from a person who at the time of the seizure was clothed with such attributes of ownership as to make the seizure of the res an invasion of his rights under the Fourth Amendment to the Constitution.

In this case we are not persuaded that the claimants have established such a status as warrants their attack upon the libel.

Rizzo has filed a writing (verified it is true) making claim to the 146,157 gallons of alcohol and states therein "that at the time of the attachment thereof the said Frank Rizzo was and is the true bona fide owner of the said 146,157 gallons of alcohol and that

no other person is the true and lawful owner thereof."

The Matoil Service & Transport Company, Inc., filed a claim for the boats, signed by their attorney and verified by him "upon information and belief."

The government by its pleadings contested the allegations of ownership in all of these claims.

No testimony was adduced by either side as to ownership or lack of ownership with regard to the claimant, Matoil Service & Transport Company, Inc.

As to the claim of Rizzo, although allegedly in court, he did not even by his own oral testimony substantiate his claims of ownership but chose to remain silent.

The government on the other hand produced at least one witness who testified that this self-same Rizzo had, at the time of the seizure, represented himself to be but a watchman hired only a few hours previously.

■ When the government, as in this case, has definitely put into issue the purported ownership of the claimants, the proceedings can then follow but one logical channel. The claimants must prove their allegations of ownership. If the ownership is in the "good faith" alleged by these claimants in their written claims, no hardship is imposed upon them by this requirement.

Here no effort was made by the claimants in this direction other than the perfunctory filing of the written claims and upon this allegation of their respective rights they seek to take advantage of all the protection made available by the Constitution and reserved only for those persons who have bona fide status to claim it.

Upon the question of proof of ownership relevant comment was made by Judge Woolsey of the Southern District of New York in The Sebastopol (D. C.) 47 F. (2d) 336, 342, wherein he said: "In situations such as we have here, where proceedings in rem against vessels are involved, if their owners come into court as claimants thereto, they come in as actors in the proceeding, for they are in effect petitioners asking for a favor—to have their ships returned to them. U. S. v. 422 Casks of Wine, 1 Pet. 547, 549, 550, 7 L. Ed. 257. On such a petition the burden is on them to show their ownership, their present right to possession of the vessel, The R. W. Skillinger, 1 Flip. 436, 21 Fed. Cas. 102, 103, No. 12,181, and, in the case of a forfeiture proceeding under section 26 of title 2 of the National Prohibition Act [27 USCA § 40], their innocence of complicity in the acts for which

the forfeiture is sought. Cf. U. S. v. One Hundred and Twenty-nine Packages, 27 Fed. Cas. 284, 285, 286, No. 15,941. At this point in any case in rem issue may be joined under a practice long familiar to determine the claimant's locus standi. U. S. v. 422 Casks of Wine, 1 Pet. 547, 549, 550, 7 L. Ed. 257; The Two Marys (D. C.) 10 F. 919, 920, 928; The Steamer Spark v. Lee Choi Chum, 1 Sawy. 718, 22 Fed. Cas. 871, 873, No. 13,206; The Prindiville, 1 Brown's Adm. 487, 19 Fed. Cas. 1345, 1346, No. 11,435; U. S. v. One Hundred Barrels of Cement, 27 Fed. Cas. 292, 293, No. 15,945."

Not only is such a showing necessary in a proceeding in rem but in criminal cases as well a motion to suppress evidence will not prevail unless the moving party be one whose constitutional rights are imperiled.

In the case of Connolly v. Medalie (C. C. A.) 58 F. (2d) 629, 630, the petitioner was, as here, a "watchman," and the court held as follows: "We assume for argument that the search and seizure were unlawful; and that any persons aggrieved might suppress the evidence so acquired. None of the petitioners fall within that class. Although Connolly alleged that he was in 'sole charge, possession and control' of the brewery, it was only as a 'watchman.' This relation to the property did not make its invasion a wrong to him; his supposed 'possession' was not such at all. He was only a servant on the premises, and, certainly in New York, had no possession; possession remained in his employer. Kerrains v. People, 60 N. Y. 221, 19 Am. Rep. 158; Presby v. Benjamin, 169 N. Y. 377, 62 N. E. 430, 57 L. R. A. 317; Haywood v. Miller, 3 Hill (N. Y.) 90; Napier v. Spielmann, 127 App. Div. 567, 111 N. Y. S. 983. The entry and the search which followed, were therefore no wrong to him, but to the Neversink companies, which were the owners, if he be right. He would for this reason be unable to secure a return of the property seized."

Judge Learned Hand of the Second Circuit then cites an entire collection of cases upon the subject including Chepo v. United States (3d C. C. A.) 46 F. (2d) 70.

The claimants' theory seems to be that by filing the sworn notices of claim they have cast themselves in the rôles of actors in the proceedings and that no further proof of ownership is necessary even though their claims are negatived by the government pleadings. They argue that a seizure illegally obtained must be returned. The cases they cite support such a contention but the query still remains—Who has the right to raise the

question of the legality or illegality of the search, and what quantum of proof is necessary to demonstrate his status?

In all of said cases cited by the claimants the owners either appear or the question of ownership is definitely not made an issue by the pleadings. Every case cited by claimants is distinguished in these respects from the case at bar.

I find at this preliminary stage of the proceedings that sufficient proof of ownership has not been adduced by the claimants to warrant the summary dismissal of the libel, and consideration of the actual legality of the search and seizure is made unnecessary now. The motions to dismiss the libels will be denied.

In view of the large expense attendant upon the storage of these seizures, pending the litigation, the cases may be set down for final hearing at as early a date as convenient to all parties concerned. Meanwhile, the United States attorney should make application to increase the indemnification for costs furnished by the claimants, in the event that the government should be finally sustained.