# THE CHIQUITA.

## No. 3760.

District Court, S. D. California, Central Division.

June 4, 1930.

Ignatius F. Parker, Asst. U. S. Atty., of Los Angeles, Cal.

Ames Peterson, of Los Angeles, Cal., for respondent.

McCORMICK, District Judge.

This is a libel by the United States against the American yacht, Chiquita, brought under section 4377 of the Revised Statutes (46 USCA § 325). The specific provision of said statute, which the libel alleges was offended by the respondent yacht, is that she "was registered as a pleasure yacht and engaged in trade other than that for which she was licensed." Pursuant to process and monition, one J. G. Cornwell appeared as claimant to the yacht and filed answer herein in which he denied the allegations of the libel and set up certain affirmative defenses that I consider unnecessary to mention or discuss, except as hereinafter adverted to.

The issues were referred to a Commissioner. He has filed his report wherein he recommends dismissal of the libel. The government has filed exceptions to the report, and the question for decision is whether the report should be confirmed and the libel dismissed. The record of reference in the minutes of this court fails to disclose whether the reference was by consent of the parties or otherwise. The respective proctors are not in agreement as to whether the reference was plenary or otherwise, and, although the order of reference was made by me, I have no independent recollection as to the nature of the reference or of the intent of the court at the time of ordering it. Mr. Peterson, proctor for the claimant, asserts that the reference was by consent and plenary in its nature, while Mr. Doherty, Assistant United States Attorney, who appeared in court at the time of the order of reference, has no distinct independent recollection as to the nature of the reference. In this situation, it has been considered necessary for the court to examine de novo, the entire record including the transcript of testimony before the Commissioner in order to properly consider and determine the exceptions to the Commissioner's report. It was found and determined by the Commissioner that probable cause existed for the seizure of the yacht as well as for the filing of the libel herein. In such conclusion I concur, and, accordingly, the libelant is entitled to a finding in the nature of a certificate of probable cause that justifies the seizure, libel, and detention of the respondent yacht. Upon the Commissioner's decision of probable cause, the respondent and claimant assumed the onus probandi, and went forward with their proof and attempted to show the innocence of the yacht. At the conclusion of the evidence, the Commissioner was in the most favorable situation to determine the credibility of the witnesses and the value and effect of the evidence produced before him. He was more favorably situated to draw inferences and to determine the strength or weaknesses of oral testimony than is now possible from an examination of the cold, lifeless record of the hearing. In such a situation, it is considered unsafe to reverse the Commissioner's conclusion on the main issue of fact in this proceeding, to wit, as to whether all of the evidence establishes by a fair preponderance thereof that the respondent yacht at the time of seizure was engaged in trade other than that for which she was licensed, within the meaning of section 4377, Revised Statutes (supra.)

There are some features of the master's report with which I cannot concur. The statute under which this libel is prosecuted is the ancient act of Congress of February 18, 1793. Another provision of said act, known also as section 4380 of the Revised Statutes (46 USCA § 328), reads: "All penalties and forfeitures which shall be incurred by virtue of this chapter may be sued for, prosecuted, and recovered as penalties and forfeitures incurred by virtue of the laws relating to the collection of duties, and shall be appropriated in like manner; except when otherwise expressly prescribed." It seems to me that here there is a clear legislative intent that libels prosecuted under this act of Congress shall be heard upon and under the same rules of evidence and procedural advantages as are ordained by section 615 of the Tariff Act of 1922 (19 USCA § 525). See, also, The Good Templar (D. C.) 97 F. 651.

But even assuming that the procedure similar to that authorized by said section 615 of the Tariff Act of 1922 is applicable in libels under section 4377 of the Revised Statutes, nevertheless, I think it not imperative to disagree with the Commissioner in his determination as to the sufficiency of the evidence to justify forfeiture of this yacht. It may be that a strong suspicion which justifies a finding of probable cause at the conclusion of libelant's evidence could be enlarged in the mind of the Commissioner so as to constitute a preponderance of the evidence at the conclusion of the hearing, but such is not necessarily the case, because it may also appear that, although at the conclusion of libelant's evidence probable cause is shown, yet, when the adverse party goes forward with his proof, even though it may not be convincing, it may nevertheless be sufficient to render forfeiture unwarranted. In other words, the quantum of proof sufficient to show probable cause may be lacking in that probative force

which justifies forfeiture of property. This was apparently the situation in the mind of the Commissioner in this proceeding, after having heard and after having weighed all of the evidence, and my examination of the record has not convinced me of any such plain error of the Commissioner that would require a reversal of his conclusion.

I think it doubtful, assuming that the record is sufficient to justify a finding, that the cargo thrown overboard during the pursuit of the Chiquita by the Coast Guard was a quantity of lobsters, whether the court can conclude therefrom that the Chiquita was thereby engaged in trade other than that for which she was licensed within the proper meaning of section 4377. The action of carrying the cargo of lobsters at the time of the seizure of the vessel was incidental. There is no evidence that the yacht had been used in any similar enterprise at any other time. There is affirmative evidence that the yacht had been regularly engaged as a pleasure boat. It would therefore appear that no new trade was permanently and exclusively pursued; no determination had yet been formed or evinced to abandon entirely the usual employment of the vessel.

The Commissioner struck out a line of evidence of the interception of radio messages between a station in British Columbia, and a ship on the high seas off the coast of Southern California regarding certain illegal traffic in intoxicating liquors, in which communications the Chiquita was mentioned. These messages were transmitted some months prior to the seizure involved in this libel, and were intercepted by prohibition officers of the United States. I believe such evidence was admissible. The weight of it is, of course, a matter that is entirely for the court to consider, but any credible legal evidence that would tend to show that the Chiquita was engaged in, or contacting with, enterprises to smuggle or introduce intoxicating liquor into the United States was admissible. It was the contention of libelant that the Chiquita was "a rum runner," and was at the time of the seizure engaged in transporting intoxicating liquor into the United States

contrary to law. It was the government's claim that the cargo thrown overboard was intoxicating liquor then in process of being smuggled into the United States. Any evidence that tended to show illegal liquor transactions by the Chiquita or that would tend to prove her general reputation in smuggling activities of intoxicating liquor was relevant and material to the issue. But a consideration of such evidence fails to satisfy me that the Commissioner has plainly erred in recommending a dismissal of this libel. No liquor was found aboard the Chiquita when it was searched at the time of arrest.

The government offered no positive evidence as to what was thrown overboard at the time of the pursuit which culminated in the seizure of the Chiquita, other than that the objects appeared to be burlap wrapped, and about two feet long and nine inches wide, while the claimant has introduced direct evidence that it was a quantity of stolen lobsters taken out of season and wrapped in burlap that the boatmen threw overboard, and the evidence tending to show that such activities were incidental to the main trade of the yacht, as a pleasure boat, the conclusion of the Commissioner that the allegations of the libel were not sustained by a fair preponderance of all the evidence is not clearly erroneous, it follows that the exceptions to the report of the Commissioner herein must be overruled and denied, and a decree is ordered as recommended by the Commissioner, dismissing the libel herein and releasing the yacht Chiquita from further restraint.

In the matter of costs, probable cause for the seizure and libel is so apparent, and the maneuvres of the Chiquita as well as the activities of those in command of her during the pursuit by the Coast Guard were so suspicious, and claimant's neglect concerning the use of his yacht is so palpable, I feel that, in justice, the costs which have accumulated on account of the arrest and detention of the yacht should be divided two-thirds thereof against libelant, and one-third thereof against claimant, and that no other costs should be allowed any party herein.