**UNITED STATES v. DAVIDSON.**
No. 2549.

Circuit Court of Appeals, First Circuit.
June 10, 1931.

Charles H. Eden, Asst. U. S. Atty., of Providence, R. I. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., on the brief), for the United States.

Daniel T. Hagan, of Providence, R. I. (James H. Hagan, Jr., of Providence, R. I., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a libel of information filed in the District Court of Rhode Island to forfeit the gas screw yacht Eaglet, licensed December 23, 1929, as a pleasure vessel of the United States, to George Davidson, her sole owner. In the libel, among other things, it is alleged that the Eaglet was seized by the Coast Guard on the 1st day of June, 1930, on the navigable waters of the United States, to wit, on the east side of Kickemuit river, at or near its junction with Mount Hope Bay, in said district, and within the admiralty and maritime jurisdiction of the court; that on June 4 the vessel was turned over to the collector of customs of the port of Providence in said district, who, before the filing of the libel, adopted the seizure and now holds said Eaglet in said district and within the admiralty and maritime jurisdiction of the court as forfeited for violation of section 4214 of the Revised Statutes, as amended, and section 4377 of the Revised Statutes.

The allegations of the first count of the libel are that before and at the time of said seizure (June 1, 1930, the Eaglet, being licensed and enrolled as a pleasure vessel as provided in section 4214, as amended (title 46, USCA § 103), was engaged in transporting merchandise for pay contrary to the provisions of said section, and that, by reason of the foregoing and the provisions of said section 4214 as amended, said Eaglet became liable to seizure and forfeiture.

In count 2 it is alleged that before and at the time of the seizure the Eaglet, being then and there licensed and enrolled as a pleasure vessel, was employed in a trade other than that for which she was licensed, in that she was employed in the trade of unlawfully transporting intoxicating liquor containing more than one-half of 1 per cent. of alcohol fit for beverage purposes, and that, by reason of the foregoing and the provisions of section 4377 of the Revised Statutes (46 USCA § 325), the Eaglet became liable to seizure and forfeiture.

June 17, 1930, George Davidson appeared and filed a claim as owner. In it he asked the court to release the vessel on bond, under section 938 of the Revised Statutes (title 28 USCA § 751), and supported his claim by an affidavit that he was the sole owner, and that, at the time of the seizure, no person was arrested in connection with the charge against the vessel. July 2, 1930, an order was entered for the release of the vessel on bond, and on July 30, 1930, the appellant excepted to the order.

August 4, 1930, the claimant filed an answer and exceptions, in which he admitted that the Eaglet was licensed and enrolled as a pleasure vessel of the United States; denied that she was seized on the navigable waters of the United States within the District by the Coast Guard; denied that before the filing of the libel the collector of customs had adopted the seizure, and that, at the time of the filing of the libel, held the Eaglet within the district and within the admiralty and maritime jurisdiction of the court.

As to the first ground of forfeiture, the claimant denied that before and at the time of the seizure the Eaglet was engaged in transporting merchandise for pay, and that she became liable to seizure and condemnation by reason of section 4214, and denied that all the allegations were true and within the civil, admiralty, and maritime jurisdiction of the court.

As to the second ground, the claimant denied that before and at the time of seizure the Eaglet was employed in a trade other than that for which she was licensed, that is

to say, that, being licensed as a pleasure vessel, she was then and there employed in an illegal trade, to wit, the trade of transporting intoxicating liquor, etc.; denied that, by virtue of the foregoing and the provisions of section 4377 of the Revised Statutes, she became liable to seizure and forfeiture; and denied that all and singly the premises were true and within the civil, admiralty, and maritime jurisdiction of the court; and, as an exception, alleged that the vessel was not seized on the navigable waters of the United States and that the court was without jurisdiction in admiralty.

A hearing was had on the libel and answer. The claimant presented no evidence. The government's evidence was that, at about five minutes of 4 on the morning of June 1, 1930, the Eaglet was observed running without lights into a slip at Fall river; that immediately thereafter trucks were observed on the dock beside the slip and men were seen unloading sacks from the vessel to one of the trucks; that the Coast Guard vessel C. G. 283, having her searchlights turned on, attempted to enter the slip, and, when twenty-five feet away fired one blank from her gun for the Eaglet to stand to; that the Eaglet got under way and collided with the Coast Guard 283 in leaving the slip; that, as she was leaving the slip, men on board the Eaglet were seen throwing sacks overboard into the slip; that the Eaglet was pursued into the Kickemuit river in Rhode Island; that in the pursuit the Coast Guard 283 ran aground on a point of land; that the Eaglet rounded this point and after being out of sight of the 283 for fifteen minutes she was found beached in Rhode Island; that her crew had departed; and that the Coast Guard seized and took possession of the Eaglet at 5 a. m. Coast Guardsman Pressel testified that, when he first boarded the Eaglet in the morning, she was wholly in the water, and at 5:30 that morning, when the Coast Guard left her, she was afloat in the waters of Kickemuit river; that, on the morning of the seizure, 243 sacks were taken from the bottom of the river at a point about 200 feet astern of the Eaglet; that, in the afternoon of the same day, Coast Guardsmen Beaudoin and Pressel returned to the Kickemuit river and found the Eaglet with her bow on shore and the aft part of the vessel in the water. There was no testimony that any member of the Coast Guard had been on board the boat since they left her in the morning, when she was out in the stream, until they returned in the afternoon. No liquor was found on board the vessel. Two days following the seizure, Edgecomb,

one of the Coast Guard on C. G. 283, recovered seven sacks of liquor from the slip at the place where he had seen the crew of the Eaglet drop sacks overboard. He testified that none of the Coast Guard saw any of the sacks thrown from the Eaglet in Kickemuit river which they found at a point about 200 feet from her stern. The deputy collector of customs, to whom the sacks were turned over, testified that the seven sacks recovered from the slip bore the brand "William Penn Whiskey," and that the brand on these sacks corresponded with the brand on the 243 sacks recovered from the Kickemuit river.

At the hearing one of the seven sacks was opened; none of the seven sacks had been previously opened. The bottles in this sack were marked "William Penn Whiskey." None of the bottles had been opened, and the district attorney asked permission to open one so that the court might smell it, but was not permitted to do so. The deputy collector, called as a witness and having one of the bottles before him, was asked: "What is it? Do you know?" and answered: "That is William Penn Rye Whiskey." Two bottles of the William Penn whisky were offered in evidence, but, on objection, were excluded, to which exception was taken. There was also testimony that all of the seven sacks were marked "William Penn Whiskey," the same as the one that was opened.

At the close of the testimony the claimant moved to dismiss the libel on the ground that the court was without admiralty jurisdiction, claiming that the vessel was seized by the Coast Guard when she was boarded in the afternoon, at which time she was partially out of water. This motion was denied.

A further motion to dismiss was made "on the ground that there was no evidence to sustain the allegations of the libel (1) that the vessel was transporting merchandise for pay, and (2) was unlawfully engaged in transporting intoxicating liquor." This motion was granted on the ground that "there was no evidence to sustain the allegations of the libel, in that the liquor recovered from the slip could not be connected with the Eaglet."

The final decree dismissing the libel was: "It is ordered, adjudged and decreed that the libel herein be and the same hereby is dismissed without costs, and that the bond given in accordance with order of this court in connection with the release of said vessel on bond, be discharged." It is from this decree that the appeal is taken. The errors assigned and here relied on are that the court

erred (1) in *ordering the vessel released on bond*; and (2) in dismissing the libel.

The question of admiralty jurisdiction depends upon whether the seizure was made on land or on the navigable waters within the district of Rhode Island. The order of the District Court denying the motion to dismiss for want of admiralty jurisdiction includes a finding that the seizure was made on navigable waters within the District and was justified, if there was any evidence to support such finding. That there was such evidence cannot be questioned, for it appeared that, at the time the vessel was boarded and seized on the morning of June 1, she was afloat in the navigable waters of Kickemuit river in the district of Rhode Island. How she came to be beached between the time of the seizure in the morning and when the Coast Guard returned in the afternoon, the evidence does not disclose. She may have been washed ashore by the tide. It does not appear that any one took her ashore. We are of the opinion and find that the seizure was made in the navigable waters of the United States within the district of Rhode Island.

The main question, so far as count 1 is concerned, is whether there was any evidence from which it could be found that before and at the time of the seizure the Eaglet was engaged in transporting merchandise for pay and in violation of section 4214, as amended; she having been licensed and enrolled as a pleasure vessel. This section, as amended, reads as follows:

"The Secretary of Commerce may cause yachts used and employed exclusively as pleasure vesssels * * * to be licensed on terms which will authorize them to proceed from port to port of the United States and to foreign ports without entering or clearing at the customhouse; such license shall be in such form as the Secretary of Commerce may prescribe. Such vessels, so enrolled and licensed, shall not be allowed to transport merchandise or carry passengers for pay. Such vessels shall have their name and port placed on some conspicuous portion of their hulls. Such vessels shall, in all respects, except as above [entering and clearing], be subject to the laws of the United States, and shall be liable to seizure and forfeiture for any violation of the provisions of this chapter." 46 USCA § 103.

We are of the opinion that there was adequate evidence to warrant the finding, and we find that the Eaglet had engaged in transporting merchandise for pay; that on the morning of the seizure she had had on board and had transported not only the sacks seen on the trucks at the dock and the seven sacks found in the slip, marked "William Penn Whiskey," but the 243 sacks similarly marked and found within 200 feet of her stern in the Kickemuit river. It is true there was no direct evidence that the Eaglet was engaged in transporting merchandise for pay, but, inasmuch as she had on board and transported more than 250 sacks, which, with the bottles they contained, were marked "William Penn Whiskey," and which, after discovery by the Coast Guard and during her flight, she undertook to free herself of by throwing overboard, there can be no reasonable doubt that she was transporting this large quantity of merchandise for pay. This was the finding and ruling in The Herreshoff (D. C.) 6 F. (2d) 414, and in The Conejo (D. C.) 10 F. (2d) 256. Both of these cases arose under the same provisions of law as are here drawn in question in count 1. The latter case was brought to this court for review. The Conejo, 16 F.(2d) 264. In the opinion of the court, written by Judge Anderson, affirming the decision of the District Court, it was said:

"The evidence shows conclusively that the Conejo was engaged in rum-running off the coast of Maine; that in August, 1925, she landed a cargo of several hundred cases of whisky at Freeport, Me. This was a breach of her license, by transporting merchandise for pay, as the court below held in this case, and as Judge Morton held in a like case in The Herreshoff (D. C.) 6 F.(2d) 414."

A forfeiture should have been ordered under the first count.

We also are of opinion that the court was in error in granting the motion to dismiss as to count 2. Under this count, the claimant having failed to introduce any evidence, all the government was required to show, to entitle it to a judgment of forfeiture, was probable cause for instituting the proceeding. This count was based on a violation of section 4377 of the Revised Statutes (46 USCA § 325) which bears the same title as section 4380 (46 USCA § 328).

Section 4380 of the Revised Statutes provides:

"All penalties and forfeitures which shall be incurred by virtue of this Title may be sued for, prosecuted, and recovered as penalties and forfeitures incurred by virtue of the laws relating to the collection of duties, and shall be appropriated in like manner; except when otherwise expressly prescribed."

In The Chiquita (D. C.) 41 F.(2d) 842, 843, it was held that libels prosecuted under section 4377, by virtue of the provisions of section 4380, were entitled to "be heard upon and under the same rules of evidence and procedural advantages as are ordained by section 615 of the Tariff Act of 1922 (19 US CA § 525)," and the Court of Appeals for the Ninth Circuit, in 44 F.(2d) 302, apparently approved the holding of the District Court as to this matter.

The evidence in this case was sufficient to warrant a finding of probable cause for the institution of the proceeding under the second count, and we so find. See Vincent v. United States (C. C. A.) 19 F.(2d) 344, and United States v. Blackwood, 47 F.(2d) 849, decided by this court March 10, 1931.

The remaining question is whether in this admiralty proceeding the vessel should have been released on the application of the owner and his furnishing a bond for the appraised value of the vessel, under the provision of section 938 of the Revised Statutes (28 USCA § 751).

The offenses alleged to have been committed by the vessel are violations of sections 4214, as amended, and 4377, both of which are customs provisions relating to the "enrolling and licensing of vessels."

Section 938 of the Revised Statutes (28 USCA § 751), provides:

"Sec. 938. Upon the prayer of any claimant to the court, that any vessel, goods, wares, or merchandise, seized and prosecuted under any law respecting the revenue from imports or tonnage, or the registering and recording, or the enrolling and licensing of vessels, or any part thereof, should be delivered to him, the court shall appoint three proper persons to appraise such property, who shall be sworn in open court, or before a commissioner appointed by the district court to administer oaths to appraisers, for the faithful discharge of their duty; and the appraisement shall be made at the expense of the party on whose prayer it is granted. If, on the return of the appraisement, the claimant, with one or more sureties, to be approved by the court, shall execute a bond to the United States for the payment of a sum equal to the sum at which the property prayed to be delivered is appraised, and produce a certificate from the collector of the district where the trial is had, and of the naval officer thereof, if any there be, that the duties on the goods, wares, and merchandise, or tonnage duty on the vessel so claimed, have been paid or se-

cured in like manner as if the same had been legally entered, the court shall, by rule, order such vessel, goods, wares, or merchandise to be delivered to such claimant; and the said bond shall be lodged with the proper officer of the court. If judgment passes in favor of the claimant, the court shall cause the said bond to be canceled; but if judgment passes against the claimant, as to the whole or any part of such vessel, goods, wares, or merchandise, and the claimant does not within twenty days thereafter pay into the court, or to the proper officer thereof, the amount of the appraised value of such vessel, goods, wares, or merchandise so condemned, with the costs, judgment shall be granted upon the bond, on motion in open court, without further delay.

"Sec. 939. All vessels, goods, wares, or merchandise which shall be condemned by virtue of any law respecting the revenue from imports or tonnage, or the registering and recording, or the enrolling and licensing of vessels, and for which bonds shall not have been given by the claimant, shall be sold by the marshal or other proper officer of the court in which condemnation shall be had, to the highest bidder, at public auction, by order of such court, and at such place as the court may appoint, giving at least fifteen days' notice (except in cases of perishable merchandise) in one or more of the public newspapers of the place where such sale shall be; or if no paper is published in such place, in one or more of the papers published in the nearest place thereto; for which advertising, a sum not exceeding $5 shall be paid. And the amount of such sales, deducting all proper charges, shall be paid within ten days after such sale by the person selling the same to the clerk or other proper officer of the court directing such sale, to be by him, after deducting the charges allowed by the court, paid to the collector of the district in which such seizure or forfeiture has taken place, as hereinbefore directed." 26 USCA § 752.

In the Admiralty Rules of Practice, promulgated by the Supreme Court on December 6, 1920, to take effect March 7, 1921, Rule 12 (28 USCA § 723) provides:

"Where any ship shall be arrested, the same shall, on the application of the claimant, be delivered to him either on a due appraisement, to be had under the direction of the court, or on his filing an agreement in writing to that effect signed by the parties or their proctors of record, and on the claimant's depositing in court so much money as

the court shall order, or on his giving a stipulation for like amount, with sufficient sureties, or an approved corporate surety, conditioned as provided in the foregoing rule; and if the claimant shall unreasonably neglect to make any such application, then the court may, on the application of either party, on due cause shown, order a sale of such ship, and require the proceeds thereof to be brought into court or otherwise disposed of."

█ It will be noted that section 938, under which the bond was given, in no way refers to or provides for the giving of a bond where forfeiture is sought for a violation of the internal revenue laws, as was the case in United States v. One Dodge Coupé (D. C.) 17 F.(2d) 661, or for a violation of the neutrality laws of the United States, as was the case in The Three Friends, 166 U. S. 1, 17 S. Ct. 495, 41 L. Ed. 897, and The Mary N. Hogan (D. C.) 17 F. 813, but that it does, among other causes, refer to forfeitures for violations of law relating to "the enrolling and licensing of vessels," which is the specific ground of forfeiture relied upon in both counts of the present libel. It is undoubtedly true that, where forfeiture is sought for a violation of the internal revenue laws or a violation of the neutrality laws, or some other cause not mentioned in section 938, the question of release on bond is discretionary, as was held in United States v. One Dodge Coupe and in The Three Friends, above cited. But where, as in this case, the violation of law charged concerns the enrolling and licensing of vessels, and the claimant requests a release of the vessel upon giving a proper bond under section 938, it is the duty of the court to release the vessel. The statute, in such case, is mandatory, as is Admiralty Rule 12.

Section 941 of the Revised Statutes (28 USCA § 754), has no relation to the matter here in question. It simply limits the authority of the marshal in taking bonds- to cases other than those of "seizures for forfeiture under any law of the United States." See The Lynx II (D. C.) 14 F.(2d) 697; In re Jackson (D. C.) 35 F.(2d) 931; United States v. One Dodge Coupe (D. C.) 17 F.(2d) 661; The California (D. C.) 12 F.(2d) 270—all of which hold that the duty of the court to release on bond, in the cases mentioned in section 938, is mandatory.

No act of Congress has been called to our attention, and we have found none, wherein the mandatory provisions of section 938 have been altered or amended. But section 939, which provides that "all vessels, * * * which shall be condemned by virtue of any law respecting the revenue from imports or tonnage, or the registering and recording, or the enrolling and licensing of vessels, and for which bonds shall not have been given by the claimant, shall be sold by the marshal or other proper officer of the court," etc., is necessarily amended by chapter 438, section 2, of the Act of March 3, 1925 (27 USCA § 42), which provides:

"Sec. 2. Upon application therefor by the Secretary of the Treasury, any vessel or vehicle forfeited to the United States by a decree of any court for violation of the customs laws or the National Prohibition Act may be ordered by the court to be delivered to the Treasury Department for use in the enforcement of the customs laws or the National Prohibition Act, in lieu of the sale thereof under existing law."

While section 2 of the Act of 1925 necessarily modifies the power of the court under section 939 to order the sale of a vessel condemned by decree of court, for which bond shall not have been previously given by the claimant, and authorizes the transfer of the property, under the conditions named in that section, to the Secretary of the Treasury, it does not directly or by necessary implication repeal or modify the provisions of section 938, which requires the court, upon the request of the claimant for delivery of the property seized and his giving bond in compliance with the terms of said section, to order the property delivered to such claimant. If Congress had intended to amend the mandatory provisions of section 938 relating to release on bond and make the power of the court discretionary, it could easily have done so, but it did not. It has simply seen fit to modify the provisions as to sale after a decree of forfeiture, where the property has not been previously released on a bond.

The decree and judgment of the District Court dismissing the libel and discharging the bond are vacated, and the case is remanded to that court, with directions to enter a decree of forfeiture and a judgment upon the bond as provided in section 938.