## THE WINNIE.

District Court, E. D. Pennsylvania.
March 15, 1932.

Edward W. Wells, U. S. Atty., of Philadelphia, Pa.

Benjamin M. Golder, of Philadelphia, Pa., for claimant.

DICKINSON, District Judge.

This cause well illustrates a type of litigation of late years ever present with us.

An existing cause of action in fact and in truth; an action brought which has no relation in legal logic to the real fact situation. No one could have a five minutes' acquaintance with the Winnie and escape the conviction with or without evidence that she was rumrunner, designed, built, rigged, and fully manned and equipped to engage in the trade, if it may be called such, of violating the National Prohibition Law. With legitimate trade or commerce she had absolutely nothing to do. She has, nevertheless, been libeled as an otherwise innocent and peaceful trading vessel which has, however, been guilty of violations of the revenue laws and regulations framed to prevent evasions of the customs duties. More accurately stated, the legal logic of the libel is that she is a vessel licensed as a yacht or pleasure boat with authority to navigate our inland and nearby waters, but which has, without lawful authority so to do, engaged in trade and extended her activities to foreign commerce in violation of the revenue regulations and shipping laws governing our coastwise and foreign trade. In truth and in fact what she did and all she did was to make contact with vessels on the high seas receiving from them prohibited alcoholic liquors which she clandestinely landed on our shores in violation of our liquor laws. The only legal question raised is whether she has by any act committed subjected herself to the condemnation of the law through a libel proceeding for a forfeiture. Here what is often called natural justice and legal justice may possibly part company. The former says she is an undoubted and notorious law violator; if the case is lacking in legal evidence of her guilt of what she has been really guilty, then convict her of violation of some revenue regulation, but when the punishment is imposed punish her for the offense of which she has been really guilty, disregarding that with which she is under the forms of the law charged. Legal justice might, however, suggest that if she has been guilty of a violation of one law, charge her with that; if, however, you make another charge, then try her on the charge you have made without regard to her probable guilt of the other charge which you have not made. This libel is framed on the theory of ignoring violations of the liquor laws.

It charges four violations of the shipping and customs laws:

(1) The nominal owner in his application for a registry or license falsely swore that he was the sole owner of the Winnie, and gave a false address, thereby subjecting the vessel to forfeiture under sections 4143, 4319, and 4321, Rev. St. (46 USCA §§ 21, 259, 263).

(2) A registry was unlawfully obtained for the vessel because of this false oath, which subjects the vessel to forfeiture under Rev. St. § 4189 (46 USCA § 60).

(3) On October 13, 1931, the Winnie proceeded on a foreign voyage "without having given up her registry or license," thus subjecting her to forfeiture under Rev. St. § 4337 (46 USCA § 278).

(4) The Winnie "was licensed for use exclusively as a pleasure vessel" but unlawfully was "employed in trade," thus subjecting her to forfeiture under Rev. St. § 4377 (46 USCA § 325).

The answer of the claimant-respondent to this libel is simply a denial of all its averments.

■ 1. This takes us to the motion to amend. After the trial upon the averments of the libel and the denials of the answer, and after the issues had all been made up and the trial closed, the claimant moved for leave to amend his answer. The sole objective of the proposed amendment is to put of record the averment of the fact that those on board of the Winnie were arrested for the unlawful transportation of liquors, and, if the truth of the averment is found, to avail the claimant of the defense that the vessel is not subject to libel proceedings, but to the summary findings of the court under section 26 of title 2 of the National Prohibition Act (27 USCA § 40). The answer of the libelant to the motion to amend is inter alia a denial of the fact averment. This means that, if the motion to amend is allowed, we will have a more or less protracted controversy over the fact, and, in consequence, another prolonged trial. We are fully justified in anticipating that the fact contest will be in large part nothing more than a sparring match over whether facts are what they are or what they may be made to appear to be. We have no desire to act as the referee of such a contest. Under the admiralty rules and the rules of all courts on the subject of belated amendments of the pleadings, the allowance of such amendments is committed to the discretion of the trial court. Leave to amend is denied.

2. This takes us to the trial issues. The brief submitted by the claimant is restricted to the proposition that section 26 of title 2 of the National Prohibition Act affords the sole procedure to be followed in this cause. The very able counsel for the claimant have

no need to have pointed out to them that the proposition is predicated upon the fact finding that there has been a violation of the liquor laws. We are precluded from making any such finding by the truth that no such charge is here made. The libelant has studiously suppressed all such charges. We are asked to find a forfeiture of the Winnie, not because she was a rumrunner, but solely because, although an innocent guileless "pleasure vessel," her owner made a false statement when she was registered, and she afterwards engaged in trade and made a "foreign voyage" without first complying with the revenue regulations. The "rules of the game" thus require us to find that in legal intendment she was (otherwise than as charged in the libel) an innocent pleasure yacht, although everyone is persuaded that her sole reason to exist was to engage in violations of the liquor laws. We accordingly make the fact finding that in the legal point of view the Winnie was not a rumrunner, although everyone knows she was. This takes us to the charges of the libel.

1. Here we must make a distinction. If we were asked to find that the claimant-respondent was the real owner of the Winnie, or that he had a known address anywhere, we would refuse to do so because fully persuaded that he is a mere figurehead for the real rumrunner owners of this speed boat, although possibly and probably one of them. We are asked, however, to make a judicial finding from the evidence that the libelant has legally proven that a false oath was made when the boat was registered. This we cannot do. Moreover, if the burden was on the claimant to prove the verity of the oath taken, we would not find that he had met this burden. It must, however, be carried by the libelant, and in this it has failed. Some comfort is afforded us by the circumstance that the customs authorities at the time of the registry took the same view of their duties. They investigated the truth of the averments of the application, found that they were formally true, and hence they could not refuse the Winnie the legal right to a registry. No one was really fooled, however. The registry official knew what the Winnie really was, and, although they registered her, they immediately reported her, and she was put on the "suspected list." The fact averment of count I is not sustained.

2. Count II goes with count I.

3. Count III charges that the Winnie had proceeded on a foreign voyage without having first done what the revenue regulations require. What the Winnie did was to come in physical touch with a foreign ship. This seems to have been held to be evidence that she had proceeded upon a foreign voyage. The Alex Clark (D. C.) 294 F. 904. The proposition that the high seas are foreign territory or the territory of any one is rather staggering. We would prefer the fiction that a vessel is the territory of the nation to which the vessel belongs, and hence that when one vessel makes a "landing" alongside of another she has touched the territory of the nation to which that vessel belongs. There is no practical need in this case to discuss at length the question of what is a foreign voyage, as this question may be disposed of in connection with the next.

4. Count IV prefers the charge that the Winnie, licensed for other than trade purposes, unlawfully engaged in trade. What she really did is clear enough. She made contact with a British ship taking on board cases of liquor. There is again no need to discuss the question of whether this is evidence from which engaging in trade can be found, because the cases cited below among many others so rule. The rulings, some of them at least seem to be broad enough to cover the case of a yacht which happened to be in need of food or liquid refreshments for its passengers and crew, and that if it supplied its wants from a passing vessel it would be engaged in trade. We would hesitate to so find, but, in the instant case, are troubled with no doubts on this score because the Winnie did not take on board the liquors which she received to be consumed by her passengers or crew, but to transport to the United States to be there unlawfully sold. The circumstances and conditions accompanying and following the taking make this clear. Among the cases cited to us and in following which we make the ruling next made are The Herreshoff (D. C.) 6 F.(2d) 414; The Rosemary (D. C.) 23 F.(2d) 103; United States v. Davidson (C. C. A.) 50 F.(2d) 517.

Following these cases we make rulings finding the averments of counts III and IV of the libel to be true, and sustaining the libel on these counts. We cannot refrain from making a further reference to the curious obsession which possesses many minds whenever the subject of alcoholic liquors is broached. We have been favored with very well and ably prepared paper books in support of the arguments addressed to us in this case, as would be expected of the experienced counsel who have appeared. That of the United States Attorney is condensed yet full, and has been found very helpful.

The feature which illustrates the obsession to which we have referred is, however, very much in evidence. Whenever the fact that the Winnie was rumrunner is thought to help in the fact finding urged, the Winnie is a rumrunner; whenever the fact of being a rumrunner puts in doubt the right to maintain the libel, then she at once ceases to be a rumrunner and becomes an innocent "pleasure vessel." The Winnie, we are prepared to believe, is a very versatile craft, but that she was or is possessed of the chameleon-like qualities ascribed to her we very much doubt.

An appropriate decree in accordance with this opinion may be submitted.