## GAUL v. UNITED STATES.

### No. 2699.

Circuit Court of Appeals, First Circuit.

Jan. 3, 1933.

Louis Halle, of New York City (Peter W. McKiernan, of Providence, R. I., on the brief), for appellant.

Charles H. Eden, Asst. U. S. Atty., of Providence, R. I. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a libel of information filed in the District Court of Rhode Island on August 3, 1931, to forfeit the American gas yacht Mitzi, licensed May 6, 1931, as a pleasure vessel of the United States to Nicholas Gaul, her owner. In the libel it is alleged that on July 5, 1931, Elsworth Lathan, of the United States Coast Guard in charge of picket boat C. G. 2434, saw the Mitzi carrying merchandise on the navigable waters of the United States, to wit, in Narragansett Bay in said district, and within the admiralty and maritime jurisdiction of the court, that on the 21st day of July, 1931, said Lathan, duly authorized in the premises, seized the Mitzi at East Greenwich Harbor on the navigable waters of the United States and within the admiralty and maritime jurisdiction of the court, and that on the following day he turned over the vessel to the collector of customs in the district, who, before the filing of the libel, adopted the seizure and now holds the Mitzi at Warwick in said district as forfeited for violation of section 4214 of the Revised Statutes, as amended (46 U. S. C. § 103 [46 USCA § 103]) and of section 4377 of the Revised Statutes (46 U. S. C. § 325 [46 USCA § 325]).

The allegations of the first count are that, before and at the time of the seizure, to wit, on or about the 5th day of July, 1931, the Mitzi was engaged in transporting merchandise for pay, contrary to section 4214, as amended, and that by reason of the foregoing and of the provisions of section 4214, as amended, the Mitzi became liable to seizure, condemnation and forfeiture.

In the second count it is alleged that before and at the time of the seizure the Mitzi was engaged in a trade other than that for which she was licensed, that is to say, said Mitzi being then and there licensed as a pleasure vessel was then and there employed in the trade of transporting merchandise, and that, by reason of the foregoing and of the provisions of section 4377 of the Revised Statutes, the Mitzi became liable to seizure and forfeiture.

On August 5, 1931, Nicholas J. Gaul appeared and filed a claim as owner, and on the same day he filed an answer in which he admitted that the Mitzi was licensed and enrolled as a pleasure vessel of the United States; denied that she was seized on the navigable waters of the United States and within the admiralty and maritime jurisdiction of the court by the Coast Guard; denied that before the filing of the libel the collector of customs had adopted the seizure, and that at the time of the filing of the libel held the Mitzi within the district and within the admiralty and maritime jurisdiction of the court. As to the first ground of forfeiture, the claimant denied that before and at the time of the seizure the Mitzi was engaged in transporting merchandise for pay, and that she became liable to seizure, condemnation, and forfeiture by reason of section 4214, and denied that all the allegations of the libel were true and within the civil, admiralty, and maritime jurisdiction of the court. As to the second count, the claimant denied that before and at the time the Mitzi was employed in a trade other than that for which she was licensed, that is to say, that, being licensed as a pleasure vessel, she was then and there engaged in the trade or occupation of transporting merchandise, and denied that, by reason of the foregoing and under the provisions of section 4377, the Mitzi became liable to seizure, condemnation, and forfeiture, and denied the premises were true and within the civil, admiralty, and maritime jurisdiction of the court. A hearing was held. The claimant presented no evidence.

The government's evidence was that on July 5, 1931, Lathan of the Coast Guard, while patroling on the picket boat C. G. 2434 near Dutch Island in the west passage of Narragansett Bay, around 11:30 at night, first saw the Mitzi through glasses coming in; that he approached her, because she was running without lights, put his searchlight on her, and signaled her to stop; that she at first slowed down, then threw out a smoke screen and escaped; that before she escaped Lathan in his patrol boat had approached the Mitzi within a distance of fifteen or twenty yards and with his searchlight saw upon her the words, "Mitzi registered Providence R. I.," her home port; that she was seen to have on board a cargo of about two hundred sacks piled up on deck, four or five sacks high, and extending from the pilot house aft; that, on the Mitzi refusing to obey the signals to heave to and undertaking to escape after throwing out her smoke screen, those on the patrol boat, which was on the starboard side of the Mitzi, put the machine gun into operation and began discharging tracer bullets at her; that some of the bullets hit the vessel and others were seen to hit the sacks and bound off into the air, making a noise as they struck; that the wind was blowing from the Mitzi toward the patrol boat; that, after the machine gun bullets had struck the cargo, a

peculiar burlap and liquor odor combined was smelled; that the next morning, July 6, 1931, Michael Mackin, an officer of the Coast Guard who had been on the patrol boat the night before and identified the Mitzi, on receiving orders from the officer in charge, proceeded to East Greenwich in search of the Mitzi, that being her customary port to lay to; that he found her there on the ways in a shipyard; that, accompanied by a member of the Coast Guard, he went aboard the vessel; that he found men working on the Mitzi; that two feet forward of her pilot house on the starboard side there was a place a foot square where they were laying in plank; that he went to the forecastle just forward of the pilot house and observed where bullets had gone through and took out some with his pocketknife; that there was no barricade in front of the pilot house; that the barricade of sacks was at the back of it and extended well aft; that the workmen had put plastic wood patches in holes all over the boat; that he could see dots where the plastic wood patches had been made; that the bottom of the boat was not dry, showing that she was recently hauled out; that he went down into the hold of the Mitzi; that it was empty but smelled of the odor of liquor; that in the hold where the cargo would be was where he smelled the strong odor of liquor; that it was about 8 o'clock in the morning when he got to the Mitzi.

Another member of the Coast Guard, who was on the patrol boat the night in question and who, on the following morning, accompanied Mackin to the East Greenwich shipyard, also testified to the same matters and that, on that morning, he went into the hold of the Mitzi and smelled alcohol.

It further appeared that on July 21 or 22 the Mitzi was seized by officers of the Coast Guard while in the water tied alongside the wharf at East Greenwich, and that she was then towed to Providence and turned over to the collector of customs.

At the close of the government's evidence the claimant rested and moved for dismissal on the ground that the evidence did not make out a cause of forfeiture under either section 4214 or 4377.

The claimant also took the position in the District Court that, inasmuch as the government's evidence went on the theory that the "cargo was a liquor cargo" and the boat was discovered in motion, under the Richbourg Case (see 281 U. S. 528, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R. 1081) and other decisions the government was bound to proceed under section 26 of title 2 of the National Prohibition Act (27 USCA § 40), and that under section 26 the government had failed to make out a case. This position is not urged here, probably because of the recent decisions of the Supreme Court in General Motors Acceptance Corp. v. United States, 286 U. S. 49, 52 S. Ct. 468, 76 L. Ed. 971, and United States v. Commercial Credit Co., Inc., 286 U. S. 63, 52 S. Ct. 467, 76 L. Ed. 978.

During the argument of the question whether there was evidence sufficient to support a finding that, on the night of July 5, the Mitzi was carrying merchandise for hire or was engaged in trade not within her license, a colloquy took place between the court and counsel for the claimant and the court put this question to counsel, "If you were coming up Narragansett Bay and saw a craft of that description proceeding without lights and you threw a spotlight on her and saw burlap bags piled on the deck, you hailed her, shot at her, and she didn't stop, and the bullets, some of them, shot into the burlap bags and ricochetted off and you got some kind of an odor from it, whether it was liquor, burlap and liquor or not, then the boat had a smoke screen equipment, put out a smoke screen and made a getaway, eliminating guesses of course but placing some reliance upon knowledge of human affairs, and what is going on around here, what would be your honest judgment as to what was on board that boat?" and the answer of counsel was, "If we were discussing such a thing anywhere but in a court room, I would say no question about it," to which the court replied, "Is there any real reason why in a court room we should park our common sense outside?"

The evidence unmistakably warranted a finding that the Mitzi was carrying a cargo of liquor, that the liquor was merchandise and of a quantity sufficient to justify a finding that she was carrying merchandise for hire, in violation of her license as a pleasure vessel under section 4214, and also warranted a finding that, being licensed as a pleasure yacht, she was engaged in a trade or occupation not within her license, in violation of section 4377.

But, apart from the foregoing, we think that, under the second count, the claimant having failed to introduce any evidence, all the government was required to show to entitle it to a decree of forfeiture was probable cause for instituting the proceeding, that the evidence in this case was sufficient to warrant a finding of probable cause for the institution of the proceeding under the second

count, and that, in this respect, the case stands the same as did the second count in the case of United States v. Davidson (C. C. A.) 50 F.(2d) 517, at pages 520 and 521, where this matter is fully considered.

The decree of the District Court is affirmed.

MORTON, Circuit Judge (concurring).

I concur. But I do not wish to be understood as approving the legality of the seizure, at a time when the vessel was not violating any law, nor being pursued for violation of law. That question is not raised by the assignments of error nor has it been argued.