## UNITED STATES v. 1,572 CASES OF ASSORTED LIQUORS.

### No. 2485.

District Court, E. D. New York.

Nov. 9, 1933.

Louis Halle, of New York City (Milton R. Kroopf, of New York City, of counsel), for claimant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Alfred C. McKenzie, of Brooklyn, N. Y., of counsel), for the United States.

GALSTON, District Judge.

This is a motion for an order vacating the seizure and the attachment of a cargo, and for the return of the cargo to the claimant, on the ground that the search and the seizure were illegal.

The matter is presented to the court on a stipulated set of facts from which it appears that on October 12, 1929 a Coast Guard patrol boat at 1 a. m., while in the vicinity of Cedar Island Light at the entrance to Shelter Island Sound, sighted the American gas screw Beatrice K running without lights. She was identified as the Beatrice K of Gloucester, Mass., and was directed to drop her anchor. At that time both vessels were within the Eastern district of New York.

One of the coast guardsmen boarded the Beatrice K. The master produced a license for the vessel which showed that she was licensed for mackerel and cod fisheries in coastwide trade. No violation of the law was observed. The master of the Beatrice K asserted that he was running without lights because his batteries were dead; that his generator was broken; that the vessel was leaking badly; and that he desired to get to drydock in Sag Harbor. A reading of the lighting batteries showed that they did not have sufficient chemicals to take a hydrometer reading, but there were other batteries in the engine room which were partly charged. The Coast Guard was of opinion that the battery could have been used with sufficient charge to ignite the lights. A power-driven pump in the engine room was found working. The boarding party also found that the load of fish in the bins was in poor condition. The boatswain was ordered to remain on the Beatrice K and he was directed to proceed with the vessel to Coast Guard Base 4, New London, Conn.

At Connecticut a search was made of the bins; some of the boards were removed, and a rod was shoved through the fish, and a cargo of 1,572 cases of assorted liquors was found.

The crew was arrested and indicted by the grand jury for the Eastern district of New York, and charged with possessing and transporting intoxicating liquors. At the trial the court directed the jury to return a verdict of not guilty on the ground that the search and the seizure of the vessel and the apprehension of her crew were illegal and unreasonable, and without probable cause.

Prior to the trial the vessel had been released on bond, and subsequently, by order of the court, the bond was canceled.

On May 3, 1930, this present libel was filed for forfeiture under section 4377 of the Revised Statutes (46 USCA § 325). Claimant then filed exceptions on the ground that the libel was insufficient in law under said section, that the only applicable law was section 26 of title 2 of the National Prohibition Act (27 USCA § 40), and on the further ground that the crew of the vessel had been acquitted. The exceptions were overruled.

There are three grounds urged for granting the relief sought by the claimant: First, that the search and the seizure were held to be unreasonable and illegal by the District Court in the trial of the criminal cause. Secondly, that there was a directed verdict of acquittal in the criminal action on the identical facts appearing in the stipulation; and that the bond given for the release of the vessel was ordered canceled because of such directed verdict of acquittal. Thirdly, that this court has no jurisdiction over the res; the seizure having been made in the district of Connecticut.

The pertinent statute is section 581 of the Tariff Act of 1930 (U. S. C. title 19, § 1581 [19 USCA § 1581]). The section relates to the boarding of vessels, and reads in part: "Officers of the customs or of the Coast Guard, and agents or other persons authorized by the Secretary of the Treasury, or appointed for that purpose in writing by a collector may at any time go on board of any vessel or vehicle at any place in the United States or within four leagues of the coast of the United States, without as well as within their respective districts, to examine the manifest and to inspect, search, and examine the vessel or vehicle, and every part thereof, and any person, trunk, or package on board, and to this end to hail and stop such vessel or vehicle, if under way, and use all necessary force to compel compliance, and if it shall appear that any breach or violation of the laws of the United States has been committed, whereby or in consequence of which such vessel or vehicle, or the merchandise, or any part thereof, on board of or imported by such vessel or vehicle is liable to forfeiture, it shall be the duty of such officer to make seizure of the same, and to arrest, or, in case of escape or attempted escape, to pursue and arrest any person engaged in such breach or violation."

■ The question that goes to the root of the controversy presented is whether probable cause must be shown to justify the boarding of the vessel. The question was considered in this court in U. S. v. Hayes, 52 F.(2d) 977. The yacht Surf was seized off Montauk Point by officers of the Coast Guard for the transportation of liquor in violation of the National Prohibition Act. A motion was made to suppress the evidence because it was obtained without probable cause to justify the search and seizure of the vessel. Judge Sheppard wrote: "I had thought that the protection of the revenue for the maintenance of the government was so important that the Coast Guard, under section 581 (19 USCA § 481), and cognate sections of the Tariff Act, might board any vessel within the twelve-mile limit 'with respect to the revenue,' regardless of the 'cut of the jib,' or whether it was a pleasure yacht or other craft, * * * since all vessels of more than five tons burden are required to be documented, or otherwise officially designated. Vessels therefore, without distinction, are subject to the scrutiny of the Coast Guard and customs officials within the jurisdiction, without 'probable cause' or a search warrant. The Pilot (C. C. A.) 43 F. (2d) 491."

Though the question in Maul v. United States, 274 U. S. 501, 47 S. Ct. 735, 738, 71 L. Ed. 1171, was whether the officers of the Coast Guard were authorized to make a seizure on the high seas more than twelve miles from the coast, the case had other aspects which led to a consideration of section 581 of the Tariff Act (U. S. C. title 19, § 1581 [19 USCA § 1581]).

Referring to the first paragraph of section 581—that heretofore quoted—Judge Van Devanter wrote that while it "restricts the authority to board and search to particular limits—the territorial waters and the high seas 12 miles outward from the coast—it does not purport to lay such a restriction on seizures. Where the seizure is incidental to a boarding and search under that provision the presence of the vessel within the prescribed limits operates to fix the place of seizure."

The case also stands for authority that section 4377 of the Revised Statutes (46 USCA § 325) is directed to the protection of the revenue, and hence a violation thereof falls within the limitations of section 581 of the Tariff Act.

In the concurring opinion of Mr. Justice Brandeis, he finds occasion to say, referring to the first paragraph of section 581: "The primary purpose of that paragraph was not to provide for the seizure of American vessels of known or suspected guilt. It was to facilitate, by means of boarding and examination of manifest before arrival in port, both the entry of admittedly innocent vessels and the collection of revenues. This end was furthered by enabling customs officers to board and search any vessel, foreign or domestic, within the stated limits, without the necessity of establishing probable cause."

Certainly it cannot be argued from the foregoing that the only purpose for boarding such vessels within the twelve-mile limit is to examine the manifests. Or stated otherwise, while admittedly the primary purpose was not to provide for the seizure of American vessels of known or suspected guilt, nevertheless it is not asserted that such was not among the purposes comprehended by the statute; and since the section authorizes the Coast Guard as well as the customs officers to make the search, it would seem that if the latter may board and search without the necessity of establishing probable cause, so also may the former.

■ However, one is not driven to the necessity of justifying the boarding without probable cause. There was no holding in the criminal trial that the boarding of the vessel was without probable cause.

Surely a vessel running without lights at 1 a. m. at the entrance to Shelter Island Sound in this day and age was a suspicious circumstance sufficient to establish in the minds of the Coast Guard probable cause for believing that there was some violation of the laws of the United States. Apparently then the Coast Guard took over the control of the vessel, for the boatswain on the vessel was ordered by Boatswain Cornell of the revenue cutter to proceed with the Beatrice K to Coast Guard Base 4, New London. The search that followed revealed a violation of the vessel's license.

■ That the government may proceed for forfeiture of the cargo under section 4377 of the Revised Statutes (46 USCA § 325), although there was an illegal search and seizure which barred a criminal prosecution, was held in The Elizabeth S. (D. C.) 2 F. Supp. 270, decided in this district.

■ As to the third and last point raised by the claimant, it appears that this court acquired jurisdiction, since the control of the

Beatrice K was effected in the territorial limits of the Eastern district of New York. The fact that the Coast Guard in control of the vessel completed their search outside of the limits of the district does not defeat the court's jurisdiction. As was said in Maul v. United States, 274 U. S. 501, 47 S. Ct. 735, 738, 71 L. Ed. 1171: "Where the seizure is incidental to a boarding and search under that provision the presence of the vessel within the prescribed limits operates to fix the place of seizure."

The motion is accordingly denied.